## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

**CIVIL ACTION NO: 4:04CV-140-M**

**RICHARD JARVIS and**
**KIM JARVIS**                                                                  **PLAINTIFFS**

**V.**

**MONUMENTAL LIFE INSURANCE CO.**                              **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion for Summary Judgment by Defendant, Monumental Life Insurance Company [DN 14]. Fully briefed, this matter stands ripe for decision. For the following reasons, the Defendant's Motion is **DENIED.**

### I. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

-1-

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Co.</u>, 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

This cases arises out of the failure of Defendant, Monumental Life Insurance Company ("Monumental"), to promptly pay on two insurance policies that it issued to Richard Jarvis. The claim was made by Plaintiffs, Richard Jarvis ("Richard") and Kim Jarvis ("Kim"), in light of what they view as bad faith on the part of Monumental.

On or about October 30, 2002, Richard Jarvis applied for two cancer policies with Monumental with the help of Don Watkins ("Agent Watkins"), an agent for Monumental. One policy was a cancer check policy which was to cover the expenses of any treatment. The other policy was to provide a $50,000 lump sum payment upon a cancer diagnosis. To qualify for these policies, Richard had to answer certain questions about his health. One such questioned asked, "Within the past year, has any proposed insured had treatment for, any indication of, been advised, or seen a physician for [a]ny abnormal pap smear, mammogram,

x-ray, prostrate specific antigen (PSA), CAT scan or MRI?"  Richard responded "no" to that question.

However, a review of Richard's medical records revealed the following:

Richard had two elevated PSA tests in January of 2002.

Richard had seen a urologist in Owensboro as a result of an elevated PSA.

Richard had another elevated PSA test in July of 2002.

Richard had been referred to Dr. Klompas, a urologist in the Trover Clinic because of his elevated PSA.

On October 15, 2002, Richard had a prostrate biopsy.

According to Kim, though, her husband orally informed Agent Watkins of the series of PSA tests leading up to his biopsy and also of the biopsy results.  Kim testified that Agent Watkins advised them that it was not necessary to list the elevated PSA test results on the application.  Richard corroborated his wife's testimony, stating that he provided Agent Watkins with all pertinent medical information. On October 30, 2002, Richard and Kim signed the application for coverage.

On July 23, 2003, Richard was diagnosed with prostate cancer.  On August 13, 2003, he applied for benefits per the terms of his two policies with Monumental.  He also began cancer treatments around this time.  Because Richard's claim was within the two year contestable period of the policy, Monumental initiated an investigation.  On October 13, 2003, prior to sending an Agent Questionnaire to Agent Watkins, Monumental denied Richard's claim.  In light of the October 15, 2002 biopsy, which indicated a PSA level of 7.1

with a free percentage of 15, suggesting a 28% probability of cancer, Monumental's underwriting department stated that it would have declined coverage had it known of Richard's medical history. In the letter denying Richard's claim, Monumental stated, "If our Underwriters had been aware of this medical history [the elevated PSA test from January] that was not disclosed on your application for coverage, you would not have qualified for this coverage." Monumental also reserved the right to re-evaluate its position in light of any new information. A day later, Monumental sent an Agent Questionnaire to Agent Watkins as part of their typical review of a claim. The problem though, according to Herlen Bess ("Bess"), field compliance specialist for Monumental, was that the claim had been denied before Agent Watkins had completed the Agent Questionnaire.

On October 20, 2003, just a week after Monumental had denied his claim, Richard sent a protest letter in which he detailed that he had fully explained his elevated PSA tests to Agent Watkins. In the letter, Richard stated, "I would appreciate your prompt attention to this matter. As I am about to lose every thing I have due to Monumental's stupidity, from the Asst. Vice President of the Claims Department, Underwriting down to the Agent." Richard also wrote that he planned to refer the matter to the Kentucky Department of Insurance. Upon receiving this letter, Monumental's field compliance section claims to have conducted an investigation into the matter and questioned Agent Watkins. Agent Watkins testified that Richard did indeed inform him of an elevated PSA test but that he did not feel the need to include it in the application because Richard claimed that antibiotics had cleared it up. According to Agent Watkins, though, Richard did not tell him of the full extent of his

-4-

prostate history, including his prostate biopsy.  Agent Watkins also testified that he had talked with the field compliance investigator at least a week prior to receiving the Agent Questionnaire on October 14, 2003.

Despite this information, Monumental did nothing until it received a letter from the Kentucky Department of Insurance on December 1, 2003.  On December 19, 2003, Monumental reversed its initial position and paid the claims Richard made on the policies. In their letter to the Kentucky Department of Insurance, Monumental stated that it "questioned Mr. Watkins concerning this matter upon receipt of Mr. Jarvis's allegations.  Mr. Watkins admitted to omitting the information concerning the PSA tests on the application. Based on this new information, Monumental will reinstate the policies..."  As a result of the delay, Richard claims that he lost his home, car, and any semblance of good credit history. Richard and Kim now bring a cause of action against Monumental based on bad faith in failing to promptly pay the claims.

### III. DISCUSSION

In its motion for summary judgment, Monumental argues that it had an absolute right to investigate material misrepresentations in Richard's applications.  It also contends that Richard cannot prove the requisite elements to maintain a claim against Monumental for bad faith.  The Plaintiffs argue that they can prove the elements of bad faith as, in their view, there was no question as to Monumental's obligation to pay the claim, there was no misrepresentation on the application, and there was not a reasonable basis to deny the claim. The parties do not dispute the applicable law.  The question is simply whether summary

judgment is appropriate in light of the facts of the case.

In <u>Wittmer v. Jones</u>, 864 S.W.2d 885, 890 (Ky. 1993), the Kentucky Supreme Court set out the elements needed to prove a claim of "bad faith:"

> "An insured must prove three elements in order to prevail against an insurance company for alleged refusal in bad faith to pay the insured's claim: (1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed."

The Defendants do not dispute that the Plaintiffs meet the first element. As to the second element, the court in <u>Pennsylvania Life Ins. Co. v. McReynolds</u>, 440 S.W.2d 275, 279 (Ky. 1969) found that "[i]f the insurer's agent, by misleading statements, induces the insured to make false answers and the latter acts in good faith, the insurer is bound. The question whether or not an applicant was, through ignorance and good faith, misled by the agent into believing that his answers were truthful, is for the jury to decide." <u>See also</u> <u>Cook v. Life Investors Ins. Co. of Am.</u>, No. 04-5161, 2005 U.S. App. LEXIS 5251, at *10 (6th Cir. Mar. 30, 2005) (finding that the presence of a material misrepresentation does not compel a judgment in favor of an insurance company if the insurance agent answered a question falsely and the applicant signed the application in good faith). The court in <u>Sovereign Camp, W.O.W. v. Alcock</u>, 117 S.W.2d 938, 943 (Ky. 1938) similarly concluded, "in the case of insurance contracts it is the fixed rule that the insurer will be estopped to deny liability on a policy if its agent inserts false statements in the written application, or by misleading statements induces the insured to make false answers, if the insured is acting in good faith."

The parties, at some length, argue as to whether Richard committed a misrepresentation on his application.  For purposes of this motion, the Court accepts as true the testimony of both Richard and Kim Jarvis that they informed Agent Watkins as to Richard's medical history and that Agent Watkins told them to not include such information on the application.  Though Monumental argues that it would have denied Richard's application had it known of his full medical history, the actions of Agent Watkins preclude the Defendants from relying on the later conclusion of its underwriting department.  In its December 19, 2003 letter, Monumental states that it reversed course because of Agent Watkins' statements to Richard and Kim.  Yet, Monumental was aware of these statements by the end of October at the very latest and by October 7th at the earliest.  It had also received Richard's letter by the end of October.  As Defendants do not dispute that they were obligated to pay the claim, they had no reasonable basis to deny it by the end of October, but waited until December 19, 2003 to reverse course.

Even if Plaintiffs can make out the first two elements, they must also show that the Defendants acted with reckless disregard or malice.  The evidentiary standard as to the third element of a bad faith claim is exceedingly high, as the court in <u>United Servs. Auto. Ass'n v. Bult</u>, No. 2002-CA-000482-MR, 2003 Ky. App. LEXIS 141, at *14 (Ky. Ct. App. Jun. 6, 2003) explained,

> The evidentiary threshold is high indeed.  Evidence must demonstrate that an insurer has engaged in outrageous conduct toward its insured.  Furthermore, the conduct must be driven by evil motives or by an indifference to its insureds' rights.  Absent such evidence of egregious behavior, the tort claim predicated on bad faith may not proceed to a jury.  Evidence of mere

> negligence or failure to pay a claim in timely fashion will not suffice to support a claim for bad faith. Inadvertence, sloppiness, or tardiness will not suffice; instead, the element of malice or flagrant malfeasance must be shown.

The tort of "bad faith" is specifically aimed at the intentional, willful or reckless disregard of an insured's rights. Zurich Ins. Co. v. Mitchell, 712 S.W.2d 340, 343 (Ky. 1986). "[L]iability for bad faith will arise only in those instances where an insurer acts with some degree of conscious wrongdoing, reckless[ly] or in a manner which reveals an unjustified gamble at the stake of the insured." Matt v. Liberty Mut. Ins. Co., 798 F. Supp. 429, 434 (W.D. Ky. 1991), aff'd, 968 F.2d 1215 (6th Cir. 1992). [I]n order to survive a motion for summary judgment, a plaintiff in a bad faith action must come forward with evidence, sufficient to defeat a directed verdict at trial, which reveals some act of conscious wrongdoing or recklessness on the part of the insurer. Id.

Nevertheless, issues of knowledge and intent are particularly inappropriate for resolution by summary judgment, since such issues must often be resolved on the basis of inferences drawn from the conduct of the parties. Riehl v. Travelers Ins. Co., 772 F.2d 19, 24 (3d Cir. 1985). "Summary judgment is seldom appropriate in cases where the parties' intentions or states of mind are crucial elements of the claim." 60 Ivy Street Corp. v. Alexander, 822 F.2d 1432, 1437 (6th Cir. 1987).

Here, the Court finds summary judgment to be inappropriate because, drawing all inferences in favor of the Plaintiffs, as it is required to do for purposes of this motion, a factfinder could conclude that Monumental acted with reckless indifference or malice towards the Plaintiffs' claim. There is evidence that Agent Watkins orally told Monumental

-8-

as early as October 7th that he had left items off the Richard's application. Yet, despite this, Monumental denied the claim on October 13th. This was done prior to sending the agent a questionnaire which is the usual course before a decision is made on coverage. Agent Watkins reaffirmed that he had left items off the application when he completed the Agent Questionnaire on or about October 16th. Agent Watkins testified that he did not elaborate on the questionnaire as to why he did not record the answers as explicitly relayed to him by Richard because he had already orally explained the situation to Monumental.

Further inferences of Monumental's indifference can be drawn from the fact that despite Richard's insistence, and Agent Watkins revelations, it only reversed course when Kentucky's Department of Insurance became involved. Richard's letter to Monumental, which it did not respond to, stated the dire circumstances he was facing. The Court finds that a jury very easily might conclude that Monumental acted with reckless indifference to Plaintiff's rights in handling this claim. Accordingly, Defendant's motion is denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [DN 14] is **DENIED.**

cc: counsel of record
04cv-140Jarvis